

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    Case No. 11-41277 MEH
                                         Chapter 11
CHAND & COMPANY, LLC,

        Debtor.   /

MEMORANDUM DECISION

On March 23, 2012, the court held an evidentiary hearing on the objection of debtor Chand & Company LLC ("Debtor") to the claim filed by Joyti Kumar ("Kumar") in the amount of $485,278.73. Mufthiha Sabaratnam appeared for Debtor and Shawn Parr for Kumar. The court heard testimony of Nilesh Chand ("Chand"), owner of Debtor, and claimant Kumar. Following the hearing, each party submitted an accounting of the claim calculation.

For the reasons stated below, the objection to Kumar's claim will be overruled in part and sustained in part.

This Memorandum Decision constitutes the court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Decision

A. Background

Debtor filed a petition under Chapter 11 on February 4, 2011. On October 17, 2011, Kumar filed Proof of Claim No. 3-2 in the amount of $485,278.73[1] (the Claim ) based on funds owed pursuant to a Promissory Note dated August 14, 2008 (the Note ). Debtor filed an Objection to Claim on September 24, 2011.

In 2008, Debtor purchased a specialty supermarket (the Market ) from Kumar and his wife, Deo Kumar. Pursuant to the Bill of Sale[2] for the transaction, the total purchase price was $400,000, composed of $25,000 paid at closing and the Note for $375,000. The Note is payable to the Kumars with interest at 6% per annum in monthly installments of $11,000.

The parties dispute the amount paid to date on the Note. Debtor asserts the obligation was reduced by (1) monthly installment payments made on the Note, (2) a $100,000 cashier s check, (3) additional in-store payments made to Kumar and (4) credit card transactions processed on Kumar s account.

It is hard to know what transpired between Debtor and Kumar in 2008 and 2009. In several instances neither party presented evidence conclusive of its position. The determination of whether certain payments should be applied to the Note was a close call and decided based on whether Kumar, as claimant, satisfied his ultimate burden of

---

[1] Debtor also objected to Proof of Claim No. 4, filed by Kumar against Chand. Kumar agreed that the Claim is his only valid claim in this bankruptcy case. Therefore, the objection to Proof of Claim No. 4 is granted.

[2] *Exhibit 2*

Decision 2

establishing the amount due on the claim.

B.  Discussion

(1)  Burden of Proof

In a bankruptcy case pre-petition claims are asserted by means of a proof of claim. See 11 U.S.C. ˆ 501(a). The Bankruptcy Code in Section 502(a) further determines that:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

Accordingly, if a creditor executes and files a proof of claim in compliance with the Bankruptcy Code and applicable rules, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. See Fed. R. Bankr. P. 3001(f).

The evidentiary effect of Fed. R. Bankr. P. 3001(f) remains in force, even in the event a party in interest files an objection to the claim. *In re Wylie*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

Thus, the objecting party carries the burden of going forward with evidence supporting its objection to the validity of the amount of the claim. Such evidence must be of a "probative force equal to that of the allegations of the [creditor's] proofs of claim." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (citing *Collier on Bankruptcy*). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant. *In re Wylie*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

Decision                                3

Case: 11-41277   Doc# 105   Filed: 04/24/12   Entered: 05/07/12 16:13:47   Page 3 of 12

(2) <u>Monthly Installment Payments on the Note</u>

The parties agree that between October 2008 and March 2009 Debtor paid $46,000 on the Note.[3]

Debtor further asserts that additional payments of $20,000 in cash were made during this period. Debtor relies on two items: (1) Check No. 1194 in the amount of $6,000, dated February 15, 2009,[4] which includes in the memo line Feb. Pay + $5000 Cash and (2) a pre-lawsuit demand letter, dated May 8, 2009, from Kumar s counsel.[5] The demand letter provides that payments on the Note commenced September 15, 2008 and demands payment of the April 15, 2009 payment.

The check notation and demand letter lead the court to find that additional cash payments were made by the Debtor on the Note through March 2009, such that there was no default in the monthly payments prior to that date. Accordingly, the Claim is reduced by $31,000 on account of the monthly payments on the Note.[6]

(3) <u>Cashier's Check in the amount of $100,000</u>

The Bill of Sale required a $25,000 payment at closing with the remainder of the purchase price paid according to the Note. Chand

---

[3]*Exhibit 5* (Debtor s Exhibit of monthly payments made on the Note) and *Exhibit H* (Kumar s Exhibit of monthly payments made on the Note). *See also* Post-Trial Accounting for Proof of Claim [Docket No. 101] filed on behalf of Kumar.

[4]Included within *Exhibit 5*.

[5]*Exhibit 4*

[6] Kumar s proof of claim calculation included a reduction of $46,000 based on monthly payments.

Decision 4

testified that he paid $25,000 in cash (i.e. a stack of bills) on August 14, 2008. He admitted that he did not obtain a receipt for the $25,000.

Chand introduced a copy of a cashier's check payable to Kumar in the amount of $100,000, dated one day after the Bill of Sale.[7] He testified that these funds were an initial payment on the Note. According to Chand, the cashier's check constituted key money, paid to Kumar for turnover of the keys to the Market on August 15, 2008. At Kumar's request, it further provided Kumar with comfort that the Debtor would pay the full purchase price.

Kumar disputes this, asserting that the cashier's check was applied as the initial payment of $25,000 and as a $75,000 advance payment for future purchases of inventory for the Market from Kumar. Kumar continues to operate a wholesale business supplying goods for Indian markets. Kumar submitted receipts for subsequent purchases of inventory for the Market, with notations that the invoices were credited against the advance payment,[8] along with a letter from Kumar dated prior to the sale closing.[9] Chand disputed receiving the letter.

Chand countered that the Market had sufficient inventory at the time of purchase and did not require a large advance payment for future purchases. He also testified that the Market did not purchase goods from Kumar.

---

[7] Exhibit 3

[8] Exhibit E

[9] Exhibit G

Decision 5

Based on insufficient evidence that a cash payment of $25,000 was made at closing in addition to the cashier's check, and the dates of the cashier's check and Bill of Sale, the court finds that $25,000 of the cashier's check was the initial payment required by the Bill of Sale.

Application of the remaining balance of $75,000 paid by the cashier's check is an even closer call. Neither the Bill of Sale nor Note require an initial payment in this amount for any purpose. However, Chand's testimony that the store was adequately stocked at the time of purchase is credible. Chand also disputes that the invoices showing application of the cashier's check proceeds[10] are valid, noting that the individual who signed as receiving the goods, Chandar Deo, is a customer of the store, not an individual authorized to accept goods on its behalf. A review of the invoices reveals that the invoices Kumar relies upon provide for purchases of $52,335 within 10 days of the sale and that the remainder of the advance was presumably exhausted within two and a half months. The purchases included in these invoices are approximately five times the amount due on other invoices submitted during trial.

Kumar also relies on the Debtor's 2009 federal and state tax returns showing a Note of $375,000 payable in less than one year.[11] The terms of the Note do not require payment within one year and the parties agree that at least $46,000 was paid on the Note by March 2009.

---

[10] Exhibit E

[11] Exhibit I

Decision 6

Neither of these facts is reflected on the returns. Therefore, the court does not find these returns conclusive evidence of the remaining balance of the Note.

The court finds that the Bill of Sale and Note are the only signed agreements evidencing payment obligations from the Debtor to Kumar. Neither of these agreements provides for an advance payment towards the purchase of inventory as a term of the transaction. There is credible testimony that the Market had sufficient inventory at the time of sale. The purchase of significant inventory shortly after the closing, and in amounts significantly greater than other inventory purchases is inconsistent with a well-stocked store. Therefore, the remaining $75,000 of the cashier s check is found to have been a payment on the Note. The Claim shall be reduced by $75,000 on account of this payment.

(4)  In Store Transactions

Debtor next asserts that the Note should be reduced by cash and check payments made to Kumar during his frequent visits to the Market. Chand testified that he provided additional payments when Kumar would come into the store, buy groceries and ask for money. As evidence of these payments Debtor provided a collection of checks purportedly reflecting in store payments made to Kumar on account of the Note.[12]

Kumar testified that the checks were payments on invoices as noted on the memorandum line of each check. He supplied the court with

---

[12] *Exhibit* 9

Decision 7

copies of invoices matching the invoice numbers and amounts.[13]

Chand testified that when the checks were issued the memorandum line was blank and that the Market never purchased additional inventory from Kumar. The court is not a handwriting expert but notes that the writing on the check and memorandum line is similar.

Based on events following the sale, Chand's testimony that significant payments were made to Kumar at the same time as the installment payments due on the Note is not persuasive. Immediately after the sale closed a dispute arose as to whether the sale included Kumar's internet business or just the Market. This resulted in the Market generating less income than Debtor anticipated, and ultimately, pre-bankruptcy litigation between the parties. It is difficult to believe Debtor would voluntarily pay Kumar more than required once this dispute arose.

The court finds that the in-store payments made to Kumar were purchases of inventory and not payments on the Note based on the invoice numbers provided on the checks, the similarity of handwriting on the checks and the related invoices. There is no reduction to the Claim based on these payments.

(5) Credit Card Transactions

Debtor lacked the ability to process credit card payments when it purchased the Market. From August 14 through December 15, 2008, Kumar allowed credit card transactions to be processed through his account.

---

[13] Exhibit J

Decision 8

Funds received from these sales were deposited into Kumar's account. Kumar than deducted the associated fees and issued Debtor a check for the difference.

Debtor asserts it is owed $38,095.82 for credit card charges received by Kumar but not paid to Debtor.[14] Kumar testified that no additional funds are due because the unpaid amounts were applied to outstanding invoices or were for charges made by customers of Kumar.

Debtor provided copies of credit card and bank statements associated with this period.[15] The parties stipulated that the checks introduced as payments made by Kumar, totaling $114,146.17,[16] were all the payments made by Kumar to Debtor on account of credit card transactions. Based on these records, Chand testified that Kumar did not transfer $38,095.82, and Kumar's claim should be reduced accordingly.

Kumar testified that he was aware of at least one transaction, in the approximate amount of $6,000, where he used the credit card machine in the Market to process a charge for the benefit of his other business interests. Kumar was not able to identify the charge in question during his testimony. Absent testimony specifying the date and amount of the transaction, the court is unable to identify the particular

---

[14] In support of its accounting, the Debtor admitted into evidence the credit card transactions using Kumar's credit card account, *Exhibit 6*, and the payments from Kumar on funds collected on behalf of Debtor using Kumar's credit card account, *Exhibit 7*.

[15] *Exhibit 6*

[16] *Exhibit 7*

Decision 9

transaction. Further, a review of the bank statements reveals that there is no credit for a transaction in the approximate amount of $6,000 during this four month period. On recall, Kumar stated that the credit card transactions also were offset against invoices due from the Market. In support of this argument, two original invoices from Fiji Market with a Joyti Kumar return address sticker over the name were admitted.[17] The original invoices are worn and dated in November and December 2008. Each invoice contains a notation (one in red ink, the other in black ink) each stating the invoice was Paid by Card Processing 12/20/08. These invoices were produced for the first time during Kumar s testimony on recall and were not exchanged between the parties prior to the hearing. No testimony was provided regarding a reconciliation in December 2008 that would have resulted in two separate invoices being applied on the same date but at separate times. These invoices are of little probative value.

Debtor has established Kumar failed to reimburse Debtor $38,095.82 for credit card transactions. This amount will be offset against Debtor s obligation to Kumar under the Note.

### C. Conclusion

For the reasons set forth above, the court finds that Debtor s objection to the Claim will be overruled in part and sustained in part. In addition to the agreed payments of $46,000 on the Note, the Note obligation shall be reduced by the following:

$31,000            for monthly payments through March 2009,

---

[17]*Exhibit K*

Decision           10

$75,000          paid by cashier's check and

$38,095.82       for outstanding credit card reconciliation amounts.

Kumar is entitled to interest through the petition date in accordance with the terms of the Note. Such interest shall be calculated on the declining principal balance as and after the credits determined herein are applied.

Kumar is not entitled to attorney's fees as there is no prevailing party to this dispute. Debtor admitted that Kumar had a valid claim based on the Note. The objection sought to reduce the claim amount by applying disputed payments as discussed above. As the court found in favor of each party for portions of the disputed issues there is no prevailing party.

Debtor's objection to Kumar's Proof of Claim No. 4, asserting a claim against a non-debtor, is granted.

Counsel for the Debtor is directed to submit an order, approved as to form by Kumar's counsel, in accordance with this Memorandum Decision.

**END OF ORDER**

Decision                                    11

COURT SERVICE LIST

All parties by ECF

Decision 12